# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2013-1332, 1333

LOOPS, LLC and LOOPS FLEXBRUSH, LLC

Plaintiffs-Appellees

v.

PHOENIX TRADING, INC. (doing business as Amercare Products, Inc.) and WENDY HEMMING

Defendants-Appellants

and

H&L INDUSTRIAL and DOES 1-50, INCLUSIVE,

Defendants,

v.

RICK KLINGBEIL and RICK KLINGBEIL, PC

Movants-Appellants.

Appeals from the United States District Court for the Western District of Washington in case no. 08-CV-1064, Judge Ricardo S. Martinez

CORRECTED OPENING BRIEF OF PLAINTIFFS-APPELLEES LOOPS LLC and LOOPS FLEXBRUSH LLC

Robert M. Steele
(admission application pending)
3156 Vista Way, Ste. 200
Oceanside, Cal. 92056
760-439-2210
Attorney for LOOPS LLC
and LOOPS FLEXBRUSH LLC

Stephen M. Hogan
1133 Sixth Ave., Ste. 207
San Diego, Cal. 92101
619-615-9135
Attorney for LOOPS LLC
and LOOPS FLEXBRUSH LLC

FORM 9. Certificate of Interest

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Loops, LLC, et al _____ v. Phoenix Trading, Inc, et al _____

No. 13-1332 and1333

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
respondent _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.    The full name of every party or amicus represented by me is:

Loops, LLC

Loops Flexbrush LLC

---

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

---

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

N/A

---

4. ☑    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Lee Smart P.S.Inc., Gregory P. Turner, 1800 One Convention Place, 701 Pike Street, Seattle, Washington 98101
Robert M. Steele, Miller & Steele, 3156 Vista Way Ste 200, Oceanside, CA 92056

---

November 10, 2013

Date

_Stephen R Hogan_

Signature of counsel

Stephen M. Hogan

Printed name of counsel

Please Note: All questions must be answered
cc: all counsel _____

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF RELATED CASES.................................................3

STANDARD OF REVIEW...................................................................4

    A.    The Court Should Apply Ninth Circuit Law..... ..........................4

    B.    Legal Standards For This Motion.....................................................4

STATEMENT OF FACTS .................................................................5

    (1)    The Flexible Handle Toothbrush.....................................................5

    (2)    Defendants' Initial Contact with Plaintiffs in January 2006 and Request For Samples of the Flexible Handle Toothbrush....5

    (3)    Hemming Immediately Sent The Flexible Handle Toothbrush Samples to China To Be Copied.......................................................6

    (4)    Plaintiffs' Sales of the Flexible Handle Toothbrush to New York City.............................................................................................7

    (5)    Plaintiffs' Discovery That Defendants Competed With Plaintiffs For A New York City Contract Using A Copied Flexible Handle Toothbrush.............................................................7

    (6)    The Issuance of Plaintiffs' Flexible Handle Toothbrush Patent on February 26, 2008.........................................................................8

(7) Plaintiffs' Notice to Defendants of the Patent's Issuance on June 13,2008....................................................................8

**STATEMENT OF THE CASE**..................................................................8

    **A.**    **EVENTS PRIOR TO THE FILING OF THE RULE 37 MOTION**.................................................................8

    (1) The Filing of the Complaint....................................8

    (2) Defendants' Initial Disclosures...............................8

    (3) Defendants' Admissions to Sales of Flexible Handle Toothbrushes.......................................................9

    (4) Plaintiffs' Requests for Production of Documents.....................10

    (5) Plaintiffs' Attempts to Receive The Relevant Documents Through Third Party Discovery ....................................11

    (6) Plaintiffs' Motion to Compel and The District Court's September 10, 2009 Ruling Ordering All Documents "Relating to Flexible Handle Toothbrushes Are Proper Requests" ..........14

    (7) Defendants' Failure to Produce Any Documents Pursuant to the District Court's September 10, 2009 Ruling...........................15

    (8) Defendants' Depositions in November 2009 and Plaintiffs' Discovery Defendants' Failed to Comply with the District Court's September 10, 2009 Ruling Defendants' Initial Disclosures........................................................16

(9)    Defendants' Refusal to Comply with the District Court's September 10, 2009 Ruling Resulting in a Finding Defendants' Had Either Withheld or Destroyed Documents..........................17

(10)    Defendants' Filing of a Motion for Summary Judgment...........18

(11)    The District Court Orders the Deposition of H&L Industrial...19

(12)    Defendants' Motion For Leave Requesting The Deposition of H&L Industrial Be Conducted By Videotape Based on the Declaration of Defense Counsel Rick Klingbeil ..........................19

(13)    The District Court's Reliance on Defense Counsel in Ordering The Deposition Be Conducted By Videoconference...................21

(14)    The Deposition of Yun Lin Lai Proved The Declaration of Defense Counsel Relied Upon By The District Court Was False ...............................................................................21

(15)    The District Court Orders The Deposition Testimony of Yun Lin Lai Be Submitted to the Court.................................................23

(16)    The District Court Grants Defendants' Motion for Summary Judgment...........................................................................24

B.    **THE FILING OF THE RULE 37 MOTION.**...............................24

(1)    Plaintiffs' Independent Discovery of Defendants' Product Price Lists Which Included Flexible Handle Toothbrushes.......24

(2)    The Product Price Lists Discovered From the State of West Virginia Demonstrated Hemming Falsely Testified at

Deposition.......................................................................................26

(3)    The Product Price Lists Identifying Flexible Handle
Toothbrushes Also Demonstrated Defendants Had Willfully
Violated the District Court's September 10, 2009 Discovery
Ruling..............................................................................................28

(4)    The Product Price Lists Identifying Flexible Handle
Toothbrushes Also Demonstrated Defendants Filed False
Declarations Throughout the Lawsuit............................................28

(5)    Plaintiffs' Filing of a Rule 37 Motion to Strike Answer and Enter
the Default of Defendants.......................................................31

(6)    The District Court's March 15, 2011 Order Granting Plaintiffs'
Rule 37 Motion..................................................................31

(7)    The District Court's Award of Default  Damages.......................35

SUMMARY OF ARGUMENT...........................................................37

ARGUMENT....................................................................................39

A.    THE DISTRICT COURT WAS WELL WITHIN ITS
DISCRETION TO STRIKE DEFENDANTS' ANSWER AND
ENTER DEFAULT BASED ON THE REPEATED DISCOVERY
ABUSES OF DEFENDANTS...........................................................39

B.    DEFENDANTS VIOLATED THE DISTRICT COURT'S
SEPTEMBER 10, 2009 DISCOVERY ORDER WHEN THEY
FAILED TO PRODUCE THEIR PRODUCT PRICE
LISTS................................................................................41

C.    DEFENDANT WENDY HEMMING LIED UNDER OATH
      AT DEPOSITION.............................................................................45

D.    DEFENDANTS, AND EACH OF THEM, PARTICIPATED
      IN THE MISREPRESENTATIONS TO THE DISTRICT
      COURT CONCERNING THE AVAILABILITY OF H&L
      INDUSTRIAL AT DEPOSITION....................................................48

E.    THE DISTRICT COURT CONSIDERED ALL FACTORS
      BEFORE IMPOSING THE SANCTION OF STRIKING THE
      ANSWER.........................................................................................54

      (1)    Extraordinary Circumstances Existed ...............................54

      (2)    Willfulness, Bad Faith and Fault by Defendants ..............55

      (3)    The District Court's Measured Conduct In Previously
             Imposing Lesser Sanctions Demonstrated the Futility
             of Anything Less Than The Sanction Imposed ................56

      (4)    The Nexus Between The Sanction, The Misconduct and
             the Matters in Controversy...................................................57

      (5)    Plaintiffs Have Been Prejudiced By Defendants'
             Conduct ................................................................................58

F.    DEFENSE COUNSEL FAILED TO COMPLY WITH BOTH
      THE DISTRICT COURT'S DISCOVERY RULING AND HIS
      CERTIFICATION REQUIREMENTS PURSUANT TO FRCP,
      RULE 26(g)......................................................................................59

      (1)    Federal Rules of Civil Procedure, Rule 26(g)....................59

(2)    The District Court's September 10, 2009 Discovery Order
and Defense Counsel's Refusal to Respond or Comply...........60

(3)    The Depositions of Defendants Demonstrated The Existence
of Substantial Responsive Documents....................................60

(4)    The Depositions of Defendants Demonstrated Defense
Counsel Never Instructed Defendants to Preserve Evidence...62

**CONCLUSION** .................................................................................62

**PROOF OF SERVICE** .......................................................................64

**CERTIFICATE OF COMPLIANCE** ................................................65

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 857-58
(Fed.Cir.1991)...........................................................................................4

*Dreith v. Nu Image, Inc.*, 648 F3d 779, 786 (9th Cir.2011)................................4, 39

*Estrada v. Speno & Cohen*, 244 F3d 1050, 1056 (9th Cir.2001)....................2, 4, 39

*Fair Housing of Marin v. Combs*, 285 F3d 899, 905 (9th Cir.2002) .................4, 39

*Goodman v. Staples The Office Superstore, LLC*, 644 F3d 817, 822
(9th Cir.2011).........................................................................................4, 39

*Halaco Engineering, Inc. v. Costle*, 843 F2d 376, 380 (9th Cir.1988)............4-5, 54

## <u>STATUTES</u>

Fed.R.Civ.Pro., Rule 37....................................................2, 24, 31, 42, 43, 45, 57

Fed.R. Civ.Pro.,  Rule 26..................................................3, 9, 59, 60, 63

## <u>INTRODUCTION</u>

This is a patent infringement lawsuit.  Defendants admit they manufactured and imported into the United States an infringing product that was sold to New York City. During the entirety of the action, Plaintiffs sought discovery from Defendants as to the total amount of infringing product that was manufactured and imported into the United States.  To this date, Defendants have never produced those documents. Defendants have not produced purchase orders to factories in China for the infringing product; invoices from the factories in China for the manufacture of the infringing product; contracts with the factories in China for the manufacture of the infringing product; or, communications with factories and manufacturers concerning the infringing product, among other missing documents. This conduct deprived Plaintiffs of the source data to determine the quantity and dates of infringing product manufactured by Defendants in China and imported to the United States.

As a result of Defendants' refusal to cooperate in discovery, Plaintiffs were forced to bring successive discovery motions before the District Court seeking various sanctions.  The District Court found: (1) Defendants lost, destroyed, or withheld material documents, including invoices, purchase orders and emails between Amercare and its Chinese contacts that were relevant to liability and damages resulting in the District Court sanctioning Defendants with an adverse

instruction, AD.15[1]; (2) Defendants filed false declarations with the Court

concerning the availability of co-defendant's representative to attend deposition in

Seattle, AD.15; (3) Defendant Wendy Hemming lied under oath in deposition,

AD.15; (4) Defendants violated the Court's September 10, 2009 discovery order,

AD.15; and, (5) Defendants may have submitted numerous false declarations in the

action. AD.15.

Based on this "prolonged pattern of misrepresentation and deceit before this

Court" and acknowledging its prior sanction of an adverse instruction

"[a]pparently ... has done little to promote respect for the integrity of the discovery

process," the District Court struck the answer of Defendants and entered default.

AD.15-16.

The question for this court is limited in scope: did the District Court abuse

its discretion in issuing sanctions pursuant to Plaintiffs' Rule 37 motion?  In order

to overturn the District Court's  order, this court must have a "definite and firm

conviction that it was clearly outside the acceptable range of sanctions." *Estrada v.

Speno & Cohen*, 244 F3d 1050, 1056 (9thCir.2001).  When Defendants extensive

misconduct is considered it cannot be said that the District Court abused its

discretion.  The judgment should be affirmed.

---

[1]References to AD.xx or A.xx are references to the appendix. AD.xx items
can also be found in Appellant's Addendum.

Separately, Defendants' counsel, Rick Klingbeil, has appealed the District Court's order imposing sanctions against him for his participation in Defendants abuses of the discovery process. Mr. Klingbeil has, however, failed to demonstrate the District Court abused its discretion in any way. The District Court was not required to accept his belated and inconsistent efforts to explain away his misconduct.

To the contrary, the District Court had very good reason to reject such arguments and conclude that Mr. Klingbeil was an active participant in Defendants' efforts to avoid disclosure of highly relevant information. Mr. Klingbeil's utter failure to comply with the duties imposed on him as counsel of record, particularly Federal Rules of Civil Procedure, rule 26(g) and his complicity in misrepresenting Mr. Lai's ability to comply with the District Court's order, provided the District Court with more than an adequate basis to impose the sanctions it imposed on Mr. Klingbeil here.

## <u>STATEMENT OF RELATED CASES</u>

This Court has already consolidated in this action two related pending appeals, originally bearing case numbers 2013-1332 and 2013-1333, both of which are appeals from the same District Court orders.

///

///

3

## STANDARD OF REVIEW

### A.    The Court Should Apply Ninth Circuit Law

Defendants' argue, and Plaintiffs agree, that where the issues raised in this appeal are not unique to patent law, the Federal Circuit should decide this appeal according to the law of the Ninth Circuit. See, *Biodex Corp. v. Loredan Biomedical, Inc*., 946 F.2d 850, 857-58 (Fed.Cir.1991)("[O]ur practice has been to defer to regional circuit law when the precise issue involves an interpretation of the Federal Rules of Civil Procedure or the local rules of the district court").

### B.    Legal Standards For This Motion

The Ninth Circuit "review[s] the district court's rulings concerning discovery, including the imposition of discovery sanctions, for abuse of discretion." *Goodman v. Staples The Office Superstore, LLC,* 644 F3d 817, 822 (9thCir.2011) (citations omitted).

The dismissal of an action and entry of default as a discovery sanction are reviewed under the abuse of discretion standard. *Dreith v. Nu Image, Inc*., 648 F3d 779, 786 (9thCir.2011); *Fair Housing of Marin v. Combs,* 285 F3d 899, 905 (9thCir.2002).

The Ninth Circuit will overturn a dismissal sanction only if it has a "definite and firm conviction that it was clearly outside the acceptable range of sanctions." *Estrada v. Speno & Cohen*, 244 F3d 1050, 1056 (9thCir.2001). See also, *Halaco*

4

*Engineering, Inc. v. Costle*, 843 F2d 376, 380 (9thCir.1988) ("will not reverse

absent a definite and firm conviction that the district court made a clear error of

judgment").

## STATEMENT OF FACTS

### (1)    The Flexible Handle Toothbrush

Steven Kayser is the inventor of the Loops Flexbrush, a small flexible

handle toothbrush designed for safe use in prisons. A.501. Plaintiffs submitted its

patent application for the Loops Flexbrush in August 2004. A.503. The Flexbrush

comes in various sizes. It is made of flexible material, allowing the toothbrush to

be bent in half or twisted into a spiral without breaking. A.501. The Flexbrush is

well suited for use in correctional facilities because its soft handle cannot be

fashioned into a shank. A.501. Kayser is the founder of Plaintiffs Loops LLC and

Loops Flexbrush LLC and has assigned his intellectual property rights to those

companies.

### (2)    Defendants' Initial Contact with Plaintiffs in January 2006 and
### Request For Samples of the Flexible Handle Toothbrush

On January 13, 2006, Plaintiffs received a call from Wendy Hemming of

Amercare  representing that Amercare sold products to correctional institutions.

A.503. Amercare is a Washington corporation that imports a wide variety of health

and toiletry items such as toothbrushes, shampoo and soap which are resold to

5

customers particularly prisons. Wendy Hemming is the majority shareholder and president of Amercare. Ms. Hemming requested that Plaintiffs provide price quotations for Plaintiffs' patented dental floss, and samples of all products sold by Plaintiffs, including the Flexbrush toothbrushes. *Id.* The Loops Flexbrush toothbrushes were shipped that same day to Amercare in original factory packaging which included "patent pending" on the packaging. *Id.*

**(3)    Hemming Immediately Sent The Flexible Handle Toothbrush Samples to China To Be Copied**

Yun Lin Lai, the Manager of Defendant H&L Industrial (A.510), testified concerning his communications with Wendy Hemming in 2006 and the shipment of samples as follows:

> Q:    So, sometime in 2006 Ms. Hemming sent you a sample of the flexible-handled toothbrush?
>
> A:    Should be like this, how and why I start asking people to manufacture it.
>
> Q:    How many samples did Ms. Hemming send you when she sent them in 2006?
>
> A:    I cannot remember, but at least one.

A.511-512.

After receiving the samples from Plaintiffs, Mr. Lai spoke to different individuals about manufacturing the toothbrushes for H&L Industrial at a trade

show in 2006. A.511.

**(4)     Plaintiffs' Sales of the Flexible Handle Toothbrush to New York City**

Beginning in August 2006, Plaintiffs began selling their flexible handle toothbrush to New York City. A.504. On August 9, 2006, NYC purchased 96,000 Loops Flexbrush toothbrushes. A.504. Between August 9, 2006 through June 6, 2007, NYC purchased 329,376 Loops Flexbrush toothbrushes from Plaintiffs. A.504.

**(5)     Plaintiffs Discovery That Defendants Competed With Plaintiffs For A New York City Contract Using A Copied Flexible Handle Toothbrush**

On April 12, 2007, Plaintiffs received an Invitation to Bid from NYC for the Flexbrush. A.505. The Invitation to Bid was for a 39 month contract from August 30, 2007 through November 29, 2010. A.505. In late April 2007, unbeknownst to Plaintiffs, Amercare bid the Flexbrush toothbrush contract at a price which undercut Plaintiffs by more than 60 percent. A.505.  On May 17, 2007, NYC awarded the contract to Amercare for the time period of August 30, 2007 through November 29, 2010.  A.505. Plaintiffs did not learn of the contract award to Defendants until August 15, 2007.  A.505.

///

**(6)** **The Issuance of Plaintiffs' Flexible Handle Toothbrush Patent on February 26, 2008**

On February 26, 2008, the US Patent & Trademark Office granted LOOPS LLC's Utility Patent application for a flexible handle toothbrush, Application No. 10/920,822, titled "TOOTHBRUSH AND METHODS OF MAKING AND USING SAME." A.506. The US Patent & Trademark Office issued United States Patent No. 7,334,286 for Toothbrush and Methods of Making and Using Same (hereinafter '286 Patent). A.506.

**(7)** **Plaintiffs' Notice to Defendants of the Patent's Issuance on June 13, 2008**

The District Court determined Plaintiffs sent Amercare notice of its patent on June 13, 2008. A.520.

## STATEMENT OF THE CASE

**A.** **EVENTS PRIOR TO THE FILING OF THE RULE 37 MOTION**

**(1)** **The Filing of the Complaint**

On July 11, 2008, Plaintiffs filed a Complaint against Defendants for patent infringement, fraud and related theories.

(2) **Defendants' Initial Disclosures**

On January 26, 2009, Defendants served their Initial Disclosures which identified 2 witnesses and resulted in a production of 107 pages of documents.

8

A.538. Sixty-nine (69) of the pages produced by Defendants were simply copies of documents filed by Plaintiffs in this lawsuit. A.540-541. Nine (9) of the pages were copies of Plaintiffs' checks written to New York City for public records requests. *Id.* Fourteen (14) pages of the documents were Defendants' insurance policy. *Id.* Two pages were Plaintiffs' website. *Id.* One page was blank. *Id.* The remaining twelve (12) pages were New York City purchase orders, sales orders, and a handwritten note. *Id.*

Plaintiffs thereafter engaged in numerous discovery conferences seeking to have Defendants comply with their Rule 26 disclosures. A.538-539. After several months on April 8, 2009, Defendants supplemented their disclosures and produced another 94 pages of documents. A.539. The 94 pages of documents consisted solely of packing lists and bills of lading. A.541. The majority of the bills of lading were undecipherable. *Id.*

### (3)    Defendants' Admissions to Sales of Flexible Handle Toothbrushes to NYC

Defendants provided responses to interrogatories which admitted they sold and shipped 486,336 flexible handle toothbrushes to New York City. A.567. Defendants used the designation "TB-38-S" in the invoices for each of the flexible handle toothbrushes sold to New York City. A.577.

Defendants further admitted they imported 659,136 flexible handle

toothbrushes into the United States on the following dates and quantities: (1) 10/07

- 34,080; (2) 12/07 - 182,304; (3) 2/08 - 9,504; (4) 3/08 - 34,080; (5) 4/08 -

190,080; and (6) 5/08 - 209,088. A.570.

### (4)    Plaintiffs' Request for Production of Documents

On February 3, 2009, Plaintiff served Requests for Production of

Documents, Set One seeking 52 categories of documents. A.539; 547-559.

Plaintiffs approached the request two ways.  First, Plaintiffs sought documents

related to the manufacture and importation of the flexible handle toothbrushes from

China which included all communications with factories, mold makers, tool

makers, customs brokers, material suppliers, and shippers to establish the quantity

of toothbrushes manufactured and imported.  Second, Plaintiffs sought documents

related to the offering for sale and sale of the toothbrushes in the United States

which included product catalogs and lists as well as customer invoices related to

the sale of the flexible handle toothbrushes.

On May 13, 2009, Defendants produced 180 pages of documents. A.541.

Thirty-one (31) of the pages were communications with Plaintiffs; thirty-eight (38)

pages were catalog pages of Defendants' products; sixty-four (64) pages were

dealings with New York City with only 3 e-mails; forty-one (41) pages were

packing lists and delivery documents for New York and dental floss products; two

pages were a business license and three pages concerned an unrelated product

recall. *Id*.

The total amount of documents produced by Defendants as of May 13, 2009 was 381 pages. A.541. Defendants failed to produce any documents evidencing communications with their factories, mold makers, shipping companies and/or customs brokers. *Id*. Defendants failed to produce any documents concerning their purchase orders to the Chinese manufacturers and failed to produce the actual commercial invoices from the factories which would identify the type of toothbrushes ordered. *Id*. While Defendants had produced some packing lists, the packing lists were generic and did not identify the type of toothbrushes shipped. In short, Defendants had failed and refused to produce a single document which would allow the discovery of the total amount of flexible handle toothbrushes which had been ordered, manufactured and imported into the United States. *Id*.

**(5)    Plaintiff's Attempts To Receive The Relevant Documents Through Third Party Discovery**

On April 16, 2009, Plaintiffs served a subpoena for documents on Airport Broker's Corporation. A.542. Airport Brokers is one of the customs brokers that Defendants used to import goods into the United States from China. *Id*.

In May 2009, Airport Brokers produced 5,429 pages of documents. A.542. The Airport Brokers' document production consisted of 182 customs folders for the time period of January 2006 through May 2009. A.543. That is, for every

shipment of ocean cargo which Airport Broker's processed through US Customs,
Airport Brokers created an individual folder. *Id*. Each of 182 files, while not
consistent, contained common documents which included Notices of Arrival, Bills
of Lading, Entry Summaries, FDA Notices, Invoices, and Packing Lists. *Id*.
Plaintiffs were able to identify that 69 of 182 folders included shipments of
toothbrushes. *Id*. By cross-referencing the documents contained within the 69 files,
Plaintiffs were able to determine that Defendants imported 15,261,340
toothbrushes into the United States. *Id*.

    While the customs documents from Airport Brokers were helpful in
determining the quantity of total toothbrushes imported by Defendants, the files
did not contain the types of toothbrushes. A.543. The customs files only contained
the packing lists and an invoice from a freight forwarder and did not contain the
original purchase orders or the commercial invoices billed to Defendants by the
factories that actually manufactured the toothbrushes. *Id*. As a result, Plaintiffs
could not determine from these documents how many of the 15,261,340
toothbrushes were flexible handle toothbrushes. *Id*.

    By using the dates of the known shipments of flexible handle toothbrushes
to NYC in comparison with the customs files, Plaintiffs were able to determine that
Defendants used a different toothbrush designation for every shipment of flexible
handle toothbrushes imported into the United States which track the dates of sales

to New York City. The designations for the flexible handle toothbrushes used by Defendants are as follows: (1) "TB-Soft;" (2) "TB-S;" (3) No designation; (4) No designation; (5) "TB-43;" and (6) "43."  A.580. Based on the lack of any consistent toothbrush designation in the import records, Plaintiffs could not use the toothbrush designations contained within the customs files to determine how many of the 15,261,340 toothbrushes were flexible handle toothbrushes. *Id.*

On February 17, 2009 Plaintiffs served subpoenas on New York City correctional agencies ("NYC"). A.544.  The subpoenas requested, among other things, all communications between NYC and Defendants concerning the purchase and sale of flexible handle toothbrushes. *Id.*

On March 31, 2009, NYC produced 1,414 pages of documents responsive to the subpoena. A.544.  On June 25, 2009, NYC produced another 3,458 pages of documents responsive to the subpoena. *Id.*

The documents produced by NYC included thousands of pages not produced by Defendants. A.544. For instance, Document Request No. 24 to Defendants requested all communications with NYC concerning the sale of toothbrushes including e-mails. *Id.* Among other omissions by Defendants, the documents produced by NYC included no less than 18 e-mails between NYC employees and defense counsel Rick Klingbeil which were never produced by Defendants. *Id.*

13

**(6)     Plaintiffs' Motion to Compel and The District Court's September 10, 2009 Ruling Ordering All Documents "Relating to Flexible Handle Toothbrushes Are Proper Requests"**

On August 5, 2009, Plaintiffs filed a Motion to Compel Discovery.

On August 27, 2009, while the motion to compel was pending, Defendants produced 2,608 pages of documents which consisted solely of Amercare's invoices to customers in the United States for *other toothbrushes*, not the flexible handle toothbrushes at issue in the case. A.583. As of August 27, 2009, Defendants had produced 2,989 pages of documents in total.

On September 10, 2009, the District Court entered its Order granting in part Plaintiffs' Motion to Compel. AD.34-42. The Order stated in relevant part:

> [A]ll documents that relate to soft-handled toothbrushes are relevant and must be produced if responsive to a request. It is unclear from the record whether Defendants have ever sold a soft-handled toothbrush other than the Amerfresh Soft Handle toothbrush. To be clear, if they have, those soft-handled toothbrush sales are relevant to this case and are reasonably calculated to lead to the discovery of admissible evidence.

AD.37.

Further, the District Court found the particular designation used by Defendants for the flexible handle toothbrushes was irrelevant in producing documents. AD.37-38.   The Court continued:

> All flexible handle toothbrushes manufactured or shipped by Defendants are relevant to this case, regardless of the product number used to refer to them.

14

Thus Defendants should not limit their discovery responses to one product number if there are others relating to flexible toothbrushes.

AD.38.

In conclusion, the District Court ordered that "[a]ll requests for documents that are constrained to matters relating to flexible handle toothbrushes are proper requests with which Defendants must comply." AD.38.

**(7)  Defendants' Failure to Produce Any Documents Pursuant to the District Court's September 10, 2009 Ruling**

Defendants did not produce any documents after the entry of the Court's Order of September 10, 2009.  A.598-599. On October 12, 2009, Plaintiffs wrote to Defendants indicating that no responsive documents had been produced. A.599. Plaintiffs stated that Defendants had not produced a "single document concerning communications with the factories, purchase orders to the factories, communications with mold and tool makers and many other categories of documents set forth in the motion." A.599.  Defendants did not respond to the letter. A.599.  On October 21, 2009, Plaintiffs again wrote to Defendants and asked if Defendants intended to comply with the Court's September 10, 2009 Order. A.599.   Defendants did not respond. A.599.

///

///

**(8)    Defendants' Depositions in November 2009 and Plaintiffs'**

**Discovery Defendants' Failed to Comply with the District Court's**

**September 10, 2009 Ruling**

On November 2, 2009, Plaintiffs took the deposition of Wendy Hemming. Ms. Hemming testified throughout the entire day of documents in the possession of Defendants that had not been produced which had been ordered by the District Court. Hemming testified that Kai Yuen Import and Export Company manufactured and invoiced Amercare for the toothbrushes [A.604]; that she received invoices from H&L Industrial, her manufacturer's representative [A.606]; that she received invoices from mold and tool makers [A.602]; that she had bills and invoices for the shipping costs [A.603]; that she had freight charges [A.605]; and, that she had documents evidencing payments made to H&L Industrial in the form of wire transfers. A.606.

On November 3, 2009, Plaintiffs continued with Ms. Hemming's deposition. Hemming testified the manufacturer of the flexible handle toothbrushes was not Kai Yuen Import and Export Company, but rather, was Jiangsu Light Industrial Products; [A.609]; that she did not have all of the invoices  and would need to produce them the next day [A.610]; that she still had H&L Industrial documents to produce [A.611]; to the existence of purchase orders for the toothbrushes [A.612]; and, that she thought there were contracts for the toothbrushes [A.613].

16

On November 4, 2009, Plaintiffs took the deposition of Julie Siegel, the Operations Manager for Amercare. A.615.  Siegel testified that she was never instructed not to delete information from the Amercare computer system after the filing of the lawsuit and has regularly deleted files even as recently as within a month of her deposition. A.618. Siegel further testified she created a sub-file in the email system of Amercare for communications with their manufacturer's rep, H&L Industrial, called the Lai file which contained e-mails, invoices and packing lists. A.617.

**(9)     Defendants' Refusal To Comply With The District Court's September 10, 2009 Order Resulting in A Finding Defendants' Had Either Withheld or Destroyed Documents**

On November 23, 2009, Plaintiffs filed a motion for contempt of court sanctions contending Defendants were withholding or had destroyed relevant documents. A.619-620.

On March 3, 2010, the District Court found the "record shows that relevant requested documents either exist and are being withheld or existed during the pendency of this litigation and were lost or destroyed by Defendants." A.623.  In reaching this conclusion, the District Court made the following factual findings:

> Defendants had four or five invoices from Kai Yuen/Jiangsu Light within their possession or control during the pendency of this litigation. They only produced two of them. Defendants were also in

17

control of purchase orders for flexible handle toothbrushes sent from Amercare to H&L Industrial, and invoices from H&L to Amercare, which were not produced. Additionally, Defendants were in control of invoices detailing freight charges for transportation of flexible handle toothbrushes from factories in China to Chinese ports as well as wire transfers from Amercare to H&L Industrial, and these have not been produced.

A.629.

The District Court concluded:

The Court finds that Defendants are culpable in either withholding these documents or negligently destroying them after having a duty to preserve them. The Court further finds that these materials were relevant to prove the extent of Defendants' (sic) damages. Finally, the Court finds that some number of e-mails between Amercare and H&L existed during the pendency of this lawsuit which were not produced and have since been negligently deleted.  These e-mails were likely relevant to damages and liability. Defendants' contention that no documents have been destroyed and no more responsive documents exist is directly contradicted by Ms. Hemming's deposition testimony, which indicates that relevant documents do or did exist.

A.629.

The Court found Plaintiffs' were entitled to an adverse inference instruction and granted the motion. *Id.*

**(10)   Defendants' Filing of A Motion for Summary Judgment**

On March 3, 2010, Defendants filed a motion for summary judgment. A.631. The motion was based on Wendy Hemming's declaration the only offers for sale and sales of the flexible handle toothbrush were to NYC. A.632-633. Defendants did not produce any documents identifying the quantity of flexible handle

18

toothbrushes manufactured in China or imported into the United States.

On March 22, 2010, Plaintiffs opposed the motion on various grounds including directing the District Court to its recent ruling of March 3, 2010 finding Defendants had withheld or destroyed relevant documents needed to prove the extent of damages. A.636-637.

### (11)    The District Court Orders The Deposition of H&L Industrial

On March 4, 2010, the District Court ordered Defendant H&L Industrial to produce Yun Lin Lai for deposition[2]. A.641.

### (12)    Defendants' Motion for Leave Requesting The Deposition of H&L Industrial Be Conducted By Videotape Based on the Declaration of Defense Counsel Rick Klingbeil

On April 26, 2010, Defendants filed a motion for leave for H&L Industrial to appear at the court ordered deposition by videoconference.  A.644.

Defendants represented they had been working to obtain H&L Industrial's representative, Yun Lin Lai, for deposition in Seattle but had been unsuccessful. A.644.  The motion was unsupported by any declaration from Mr. Lai. Rather, the sole basis for the motion was a declaration from defense counsel Rick Klingbeil who represented he had "been working with H&L Industrial to obtain Mr. Lai's

---

[2]Co-defendant H&L Industrial filed a motion for summary judgment on February 5, 2010, A.639.

19

presence in Seattle for a deposition." A.647.  Glaringly absent from Mr.

Klingbeil's declaration was any representation as to whether Mr. Lai  had a current

visa to travel to the United States.  Instead, Mr. Klingbeil's declaration focused on

purported conversations with the "United States Department of State, Consular

Affairs ...that the time between application for a visa to travel to the United States,

and granting of the visa is currently taking approximately three months or more for

Chinese citizens such as Mr. Lai." A.648.  Mr. Klingbeil represented that based on

the "probable inability/ impossibility of obtaining Mr. Lai's physical presence in

Seattle for deposition before trial in this case, I believe it would be reasonable, and

cause the least prejudice to plaintiffs if Mr. Lai be allowed to appear and be

deposed via high speed, real-time, recordable videoconference uplink." A.648.

On May 4, 2010, Plaintiffs responded by addressing the omission in the

requested relief: there was "no testimony from Mr. Lai indicating that he does not

have a passport and cannot travel to Seattle for deposition in person." A.650.

On May 7, 2010, Defendants filed their reply. A.654.  Despite Plaintiffs'

objection the motion was not supported by a declaration from Mr. Lai, Defendants

did not file a declaration of Mr. Lai or a further declaration from Mr. Klingbeil.

Rather, Defendants represented that "in spite of substantial efforts on the part of

defendants and Mr. Lai to cause that to occur, and as discussed in defendants'

earlier Motion for Leave, it appears to be impossible to obtain the necessary

20

paperwork to bring him to Seattle in time." A.654.

**(13)  The District Court's Reliance on Defense Counsel in Ordering**

**The Deposition Be Conducted by Videoconference**

On June 1, 2010, the District Court ordered the deposition of Mr. Lai be

conducted by videoconference. A.658.  The Court began "As it turns out, Mr. Lai

is unable to travel to Seattle because it takes too long to acquire a visa." A.659.

The District Court relied on the representations of defense counsel Rick Klingbeil:

> Plaintiffs urge the Court not to accept this fact as true since
> Defendants did not submit an affidavit of a state department official.
> The Court does not need such an affidavit. It is enough that
> Defendants' counsel investigated the matter and has represented to
> this Court that acquiring the visa takes a minimum of three months.
> The Court will accept counsels' representations.

A.659.

The District Court found it "has no control over Mr. Lai's ability to obtain

proper papers to travel to the United States" and "[w]hile the Court could deny

H&L Industrial's Motion for Summary Judgment as a sanction, it makes little

sense to head to trial if there are no genuine disputes of material fact." A.660.

**(14)  The Deposition of Yun Lin Lai Proved the Declaration of Defense**

**Counsel Relied Upon By The District Court Was False**

On Monday, June 21, 2010, Plaintiffs took the deposition of Yun Lin Lai of

H&L Industrial. A.508. The deposition proved the declaration of defense counsel

was false.

Mr. Lai testified he traveled to the United States within the past year. A.513. Plaintiffs attempted to learn what efforts Mr. Lai had made to receive a visa to travel to the United States for the court ordered deposition. Mr. Lai refused to provide an answer and was instructed by defense counsel to not reveal communications with counsel:

> Q:    Have you made any efforts in the last 90 days to get a visa to travel to the United States?
>
> A:    I don't answer this question. Why? Why are you asking this question?
>
> Q:    You have to answer the question, sir. Have you made any efforts in the past 90 days to get a visa to travel to the United States?
>
> MR. KLINGBEIL: And, before he answers, I want to give an admonition. Anything he's talked to about this with me or other lawyers involved, he is not obligated to speak about and I would instruct him not to.

A.513.

After receiving this instruction, Mr. Lai testified he made no efforts to obtain a visa. A.513. Mr. Lai explained he had a five year visa, he could travel to the United States at anytime, but he was simply unwilling to do so. His testimony reads:

> Q:    So you have a visa currently that lasts through either the year 2012 or 2013?

22

A:    Correct.

Q:    And it lasts for five years, which means you can travel to the United States at any time you want this year?

A:    Correct.

Q:    So there is nothing holding you back right now from traveling to the United States; is that correct?

A:    Correct, but I am not willing to go there.

Q:    Okay. But, whether you're willing or not, you are capable of traveling to the United States, because you have the visa which does not expire to either 2012 or 2013, correct?

A:    Correct.

A.514.

**(15)    The District Court Orders The Deposition Testimony of Yun Lin Lai Be Submitted To The Court**

On July 12, 2010, the District Court ordered Plaintiff to "submit the relevant portions of Mr. Lai's deposition transcript that allegedly contradict representations made by Defendants or their counsel." A.663-664.  On July 20, 2010, Plaintiffs complied. A.665-666.

///

///

///

///

**(16)   The District Court Grants Defendants' Motion for Summary
Judgment**

On July 30, 2010, the District Court granted Defendants' motion for
summary judgment. A.516. Based on the record before it, i.e., Plaintiffs' inability
to demonstrate the quantity of flexible handle toothbrushes actually manufactured
by Defendants and imported into the United States, the District Court found in
favor of Defendants.

The District Court gave no deference to its own sanctions order that found
Defendants had withheld or destroyed relevant material documents which went to
liability and damages. A.520. The Court indicated an adverse inference instruction,
standing alone, is not enough to allow a party who has produced no evidence to
withstand summary judgment. A.530.  The District Court did not inform how a
plaintiff may prove up its damages when the defendant controlling and uniquely in
possession of that very evidence repeatedly violates and ignores court orders to
produce same.

**B.   THE FILING OF THE RULE 37 MOTION**

**(1)   Plaintiffs' Independent Discovery of Defendants' Product Price
Lists Which Included Flexible Handle Toothbrushes**

On August 13, 2010, Plaintiffs sent a Freedom of Information Act request
for documents to the State of West Virginia. A.669. The request included vendor

catalogs of Amercare for the time period of January 1, 2006 which mirrored the time periods for the document requests in this action. *Id*. On August 24, 2010, the State of West Virginia sent Plaintiffs responsive documents. *Id*. The documents revealed the following:

On December 22-28, 2009, Defendants provided a Response to a Request for Quotation from the State of West Virginia. A.669.  The Response was personally signed by Wendy Hemming as President. *Id*.  The Response was further notarized by Julie Siegel, the Operations Manager for Amercare. *Id*.  The Response was an open ended contract for the supply of hygiene and personal care products to the West Virginia Division of Juvenile Services for a period of one year. *Id*.

The Response attached two separate product price lists of Defendants' products. A.669.  Each of the product price lists included a hand written notation of a 10% discount with Wendy Hemming's initials, W.H., under the 10% discount. A.671; 678  The two separate pricing lists both included a flexible handle toothbrush, designated the TB-FLX, for the sales price of 75 cents each. A.672; 678. Neither of the product price lists were ever produced in discovery in this action. A.669.

The Response to the Freedom of Information Act request by the State of West Virginia established the following at a minimum: (1) Defendants concealed material information from Plaintiffs during discovery in this action in direct

violation of this Court's September 10, 2009 Order; and, (2) Defendants continued to offer for sale flexible handle toothbrushes after the issuance of the patent.  It was also inconceivable that Defendants' bid to the State of West Virginia was the only instance wherein Defendants offered for sale the flexible handle toothbrushes for the price of 75 cents each. The two price lists, both marked *effective 7/7/07*, were almost two and one half years old by the time Defendants sent the price lists to the State of West Virginia in December 2009. Defendants could not credibly argue the first and only time they used July 2007 price lists were two and one half years later in December 2009. As a result, Defendants apparently concealed much more than just the bid documents to the State of West Virginia.

### (2)    The Product Price Lists Discovered From the State of West Virginia Demonstrated Hemming Falsely Testified at Deposition

In November 2009, Plaintiffs' took the deposition of Wendy Hemming. A.584. During the deposition, Plaintiffs marked a product price list they had independently discovered through a separate Freedom of Information Act request. *Id*. The product price list shown to Ms. Hemming at deposition did not contain the flexible handle toothbrush designated as the TB-FLX and identified with a sales price of 75 cents. *Id*.

///

///

Ms. Hemming falsely testified that the product price list shown to her at deposition was the current price list of Amercare Products, Inc.  Her testimony reads:

Q:     Do you recognize Exhibit 1?

A:     Yes.

Q:     What is this document?

A:     This is my price sheet.

Q:     And is this your current price sheet?

A:     Yes.

A.595.

Ms. Hemming falsely testified that not only was the product price list marked as Exhibit 1 to the deposition her current price list but that she had not changed the price list for years:

Q:     And Exhibit 1 is your current pricing list?

A:     Yes.

Q:     Do you change this from time to time?

A:     No. Our price stay the same. No. I don't change for years, no.

A.596.

///

///

**(3)    The Product Price Lists Identifying Flexible Handle Toothbrushes**

**Also Demonstrated Defendants Had Willfully Violated the**

**District Court's September 10, 2009 Discovery Ruling**

On February 3, 2009, Plaintiff served Requests for Production of

Documents, Set One seeking 52 categories of documents. A.539; 547-559. The

request included all product catalogs and product lists for the period of 1/1/06 to

the present (RFP#37). A.557.  Defendants never produced a single product price

list in the litigation. A.583.

The District Court's  September 10, 2009 Order stated that the particular

designation used by Defendants for the flexible handle toothbrushes was irrelevant

in producing documents. AD.37-38. The Court ordered that "[a]ll requests for

documents that are constrained to matters relating to flexible handle toothbrushes

are proper requests with which Defendants must comply." AD.38.

**(4)    The Product Price Lists Identifying Flexible Handle Toothbrushes**

**Also Demonstrated Defendants Filed False Declarations**

**Throughout the Lawsuit**

The discovery of Defendants' bid to the State of West Virginia in December

2009, using July 2007 price lists which expressly identify the flexible handle

toothbrush, demonstrated Defendants repeatedly filed false declarations with the

District Court.

28

On September 29, 2009, Defendants filed the Declaration of Wendy Hemming in support of Defendants' Motion for Summary Judgment by which Ms. Hemming declared the "Amerfresh FHT has only been offered for sale, and only sold to one such customer, the city of New York's Department of Corrections, through the city's purchasing department, the NY-DCAS. Defendants did not advertise or market the Amerfresh FHT to the NY-DCAS, and have never advertised or marketed it to anyone else." A.681.

On December 21, 2009, (the day before Ms. Hemming signed the West Virginia bid), Defendants filed the Declaration of Wendy Hemming wherein Ms. Hemming stated in part that she "continued to see if any additional documents were available" and that to her understanding "there are no more documents within Amercare's possession, custody, or control that fall within the court's Order" (referring specifically to the District Court's September 10, 2009 Order). A.684. Ms. Hemming concealed the July 2007 price lists and the bid about to be submitted to West Virginia.

Similarly, on December 21, 2009, Defendants filed the Declaration of Julie Siegel wherein Ms. Siegel stated in part that "all documents and information I discovered during my search that related to the Amercare TB 38-S toothbrush have been provided to Loops in discovery." A.686.  Ms. Siegel (who notarized the West Virginia bid two days later on 12/23/2009) concluded "there are no documents

within Amercare's possession, custody, or control related to the TB 38-S toothbrushes that have not been previously produced to the plaintiffs in this case." A.687.

On January 29, 2010, *one month after the West Virginia bid*, Defendants filed a Declaration of Wendy Hemming wherein Ms. Hemming repeated her earlier representations that beyond "the sales to the NY-DCAS, there have been no sales or offers to sell the accused Amercare Amerfresh FHT toothbrush to any other person or customer." A.689.

On March 3, 2010, *three months after the West Virginia bid*, Defendants filed a Declaration of Wendy Hemming in Support of Motion for Summary Judgment, wherein Ms. Hemming repeated her earlier representations that "the Amerfresh FHT has only been offered for sale, and only sold to one such customer, the city of New York Department of Corrections." A.692.

On October 28, 2010, Defendants filed a Declaration of Wendy Hemming wherein Ms. Hemming repeated her earlier representations that "the only Amerfresh FHT's ever offered for sale or sold were those to New York." A.695.

Each of these declarations contained materially false statements of fact as to Defendants' offer for sale of the flexible handle toothbrushes to only New York City and/or Defendants' compliance with this Court's September 10, 2009 Order.

///

**(5)    Plaintiffs' Filing of a Rule 37 Motion to Strike Answer and Enter**

**The Default of Defendants**

On November 18, 2010, Plaintiffs filed their Rule 37 motion to strike the

answer of Defendants, enter default. and grant monetary sanctions. A.696. The

motion was based on the newly discovered evidence which demonstrated

Defendants had suppressed material evidence throughout the litigation, filed false

declarations based on the suppressed evidence, and suborned perjury. A.697-706.

**(6)    The District Court's March 15, 2011 Order Granting Plaintiffs'**

**Rule 37 Motion**

On March 15, 2011, the District Court granted Plaintiffs' Rule 37 motion.

AD.1-18.

The District Court concluded Wendy Hemming falsely testified at

deposition. The Court noted that Defendants' explanations:

> [d]oes not explain why Ms. Hemming testified at her deposition,
> under oath, that a price sheet that did not include the TB-FLX was her
> current price sheet and that she had not changed her price sheet "for
> years." Dkt.#262, Ex.D at 31:15-20. Ms. Hemming made this
> statement in November 2009, one month before the newly-discovered
> price sheet was sent to West Virginia. The newly-discovered price
> sheet was marked "effective date 07/07/07." Thus, the price sheet was
> in use well before Ms. Hemming's deposition testimony. Defendants
> do not offer any explanation for Ms. Hemming's false testimony.
> Furthermore, both Ms. Hemming and Ms. Siegel have provided
> declarations in connection with the instant motion in which they
> concede that multiple versions of the price sheet have always existed.
> Dkt.#276 at 4; Dkt.#275 at 4.

31

AD.13.

The District Court also concluded Defendants failure to produce the price

sheet violated the Court's September 10, 2009 Order:

> In addition, regardless of whether the TB-FLX product is what the
> Defendants claim it is, Defendants should have disclosed the price
> sheet to Plaintiffs during the course of discovery. Defendants' failure
> to do so violated the Court's November 2009[3] order requiring
> Defendants to produce "all documents that related to soft-handled
> toothbrushes." Dkt.69.

AD.13.

The District Court wrestled with Defendants' arguments the flexible handle

toothbrush listed on the improperly withheld price sheets were not in fact flexible

handle toothbrushes, but rather, were a "fingertip toothbrush" which did not have a

handle. The Court indicated the argument was "difficult to credit" and concluded it

was inclined to agree with Plaintiffs that Defendant's explanation was entirely

concocted.  The Court explained:

> Defendants offer no explanation for why they would call a toothbrush
> a "flexible" toothbrush when it in fact did not have a flexible handle.
> If the TB-FLX were meant to be a second-generation TB-NS No
> Shank Fingertip Toothbrush, why was the product not called the
> "Better Than No Shank *Fingertip* Toothbrush"?
>
> In addition, the price of the TB-FLX is suspiciously similar to the
> price of the Amerfresh product at issue in this lawsuit. An August
> 2009 declaration by Ms. Hemming explained that the sales price for

---

[3]The District Court is mistaken as to the date of the order as Dkt.69 is the
September 10, 2009 order.

flexible handle toothbrushes are 20-30 times the price for normal disposable toothbrushes, i.e., 80 cents compared to 4 cents. Dkt.#64-4 at 7. The TB-FLX is listed on the newly-discovered price sheet at a price of 75 cents. Dkt.#263-2 at 15. Defendants argue that the high price is due to the fact that more materials were used and because it was a better product than the TB-NS. However, Defendants do not present any evidence regarding design specifications, the cost of materials, how Defendants acquired the TB-FLX, or any of the dates associated therewith. Moreover, there are no other toothbrushes on the price sheet that are even close to the 75-80 cent range. *Id*. Rather, all of the remaining toothbrushes on the price sheet, except for the "TB-NS No Shank Fingertip Toothbrush," range in price from 4 to 16 cents. *Id*. The TB-NS is listed at 50 cents - still, only two thirds the price of the TB-FLX. *Id*. The Court is inclined to agree with Plaintiffs that it appears that "Defendants have simply taken the highest cost toothbrush on their product price list - the no shank toothbrush offered for 50 cents each - and concocted a story that the TB-FLX is an alternative version of the no-shank toothbrush." Dkt.#279 at 7.

AD.10-11.

"Having found that Defendant Wendy Hemming lied while under oath, that Defendants violated the Court's November 2009 discovery order, and that Defendants may have filed numerous false declarations in this lawsuit," the Court turned to the question of sanctions. AD.15. Before making that determination, the District Court noted the pattern of misrepresentation and deceit by Defendants already in the action:

[T]he Court notes that Defendants have already been found to have lost, destroyed, or withheld material documents, including invoices, purchase orders and emails between Amercare and its Chinese or Taiwanese contracts that were relevant to liability and damages. *See* Dkt.#152. In addition, on June 1, 2010, the Court granted Defendants leave to have Mr. Lai appear at deposition for H&L Industrial by

videoconference based on Defense counsel's representation that "it appears impossible to obtain the necessary paperwork to bring him to Seattle at this time." Dkt.#203; Dkt.#193. In its order granting leave, the Court noted, "Defendants' counsel has investigated the matter and has represented to this Court that acquiring the visa takes a minimum of three months. The Court will accept counsel's representations." Dkt.#203 at2. However, on June 21, 2010, Mr. Lai testified under oath that he had made no efforts to travel to the United States at any time. Dkt.#215, Ex A at 85-88.

AD.15.

Based on this record, the District Court stated it "is tremendously concerned with what appears to be a prolonged pattern of misrepresentation and deceit before this Court." AD.15.  In crafting the appropriate remedy, the Court indicated it had "already imposed the sanction of an adverse instruction" which "[a]pparently ... has done little to promote respect for the integrity of the discovery process." AD.16.  The Court determined "it is unclear how an adverse instruction would now alleviate the damage that has been caused by Defendants' continued failure to cooperate with Plaintiffs in discovery" and noted it was "now faced with new evidence that may or may not demonstrate that the partial summary judgment order was made in error." AD.16.

The District Court concluded:

[T]he new evidence, combined with the pattern of deception and misrepresentation on the part of Defendants throughout this litigation, indicates that the Court cannot be certain that any order it enters in this case will be supported by the benefit of a full, unadulterated record. Neither Plaintiffs, nor the Court, will ever "have any comfort that it knows the truth,

and that it can properly prepare this case for trial ... The integrity of this Court and our judicial system .. has been undermined ... [by Defendants'] conduct in this case." *Monsanto Co. v. Ralph*, 382 F.3d 1374, 1379 (Fed.Cir.2004). Accordingly, the Court exercises its discretion pursuant to Rule 37 and hereby strikes the pleadings of Defendants, including Defendants' answer and affirmative defenses, and enters judgment in favor Plaintiffs on the issue of liability.

AD.17.

### (7)    The District Court's Award of Default Damages

On October 7, 2011, Plaintiffs filed their motion for default damages. A.707. Plaintiffs faced the same evidentiary problems they faced throughout the case due to Defendants' refusal to produce documents showing the quantity of flexible handle toothbrushes manufactured and imported by Defendants.

First, Plaintiffs addressed the known sales through the contract with NYC. Plaintiffs filed their expert report which established lost profits from the NYC contract of $1,083,159. A.714-715. The report broke damages down between pre patent issuance and post patent issuance[4]. A.717. The report calculated lost profits through the end of the NYC contract of 11/30/10 using average monthly sales already established through Defendants' sales to NYC.

Second, Plaintiffs addressed the unknown manufacture and importation of flexible handle toothbrushes by Defendants.  A.718-720. Using the import records

---

[4]Damages for the alternative theory of fraud were not dependent on the date of the issuance of the patent.

received from Airport Brokers and the testimony of Wendy Hemming that flexible

handle toothbrushes cost substantially more than standard toothbrushes, Plaintiffs

demonstrated that between January 1, 2006 through April 12, 2009, Defendants

imported 1,588,592 toothbrushes of a total of 15,272,221 which met this criteria.

A.719-720. Plaintiffs sought lost profits of $4,248,944 for this category of lost

toothbrush sales. A.720.

Third, Plaintiffs sought treble damages, a permanent injunction, and

attorneys fees and costs in the amount of $444,945.11. A.722.

On March 19, 2013, the District Court entered its order granting damages of

$54,718.85 and attorneys fees of $200,926.00. AD.19-33.

First, the District Court stated its "prior summary judgment Orders are the

law of the case" and it would only consider "post-June 13, 2008 evidence of

alleged patent infringement to assess default damages." AD.22. Thus, despite

finding a prolonged pattern of misrepresentation and deceit by Defendants which

the District Court admitted "may or may not demonstrate that the partial summary

judgment order was made in error," [AD.17] the District Court provided

Defendants with the full benefit of the tainted ruling obtained by Defendants with

unclean hands.

Second, the District Court addressed lost profits for the NYC contract. The

District Court noted Plaintiffs' expert report provided for lost profits for the time

36

period of June 13, 2008 and November 30, 2010 of $460,056.00. AD.23. However, the District Court concluded that because Defendants did not sell or ship any toothbrushes to NYC after May 2008, Plaintiff have failed to prove they would have sold toothbrushes in 2009 and 2010. AD.24. The District Court did find that Defendants had imported 192,672 of the accused toothbrushes in July of 2008 based on the Airport Brokers records[5] and awarded a reasonable royalty of 28.4 cents per toothbrush for total damages of $54,718.85. AD.24.

Third, the District Court cut down Plaintiffs' attorneys fees request of $483,667.31 to what the District Court considered "fees related to abuse of the discovery process" and granted $200,926.00. AD.31.

## SUMMARY OF ARGUMENT

The sole issue here is whether the District Court exceeded its broad discretion in fashioning the sanctions it did here. When Defendants extensive misconduct is considered - most of which Defendants do not seriously dispute - it cannot be said that the District Court went to far. To the contrary, since Defendants enjoyed the benefit of their misconduct even after their answers were stricken because Plaintiffs still lacked the evidence to prove all of their damages, the District Court clearly acted well within its discretion when it entered the judgment

---

[5]This finding is another instance of sworn false statements by Defendants in this case. Defendants had provided sworn responses to interrogatories representing their last import of the accused toothbrushes was May 2008. A.570.

it did here.

Defendants have not shown reversible error under the abuse of discretion standard. All they have done is present various arguments that the District Court might have construed the facts differently. However, the District Court was not required to accept Defendants arguments and this Court will not substitute its own assessment for that of the District Court.

Further, Mr. Klingbeil has not demonstrated the District Court abused its discretion. The District Court was not required to accept Mr. Klingbeil's strained efforts to explain away his misconduct. The District Court had very good reason to conclude that Mr. Klingbeil was an active participant in Defendants' efforts to avoid disclosure of highly relevant information. His complete failure to comply with the duties imposed on him as counsel of record, particularly Federal Rules of Civil Procedure, rule 26(g), and his complicity in misrepresenting Mr. Lai's ability to comply with the District Court's order were reason enough by themselves to justify the sanctions imposed here.

///

///

///

///

///

## ARGUMENT

**A.    THE DISTRICT COURT WAS WITHIN ITS DISCRETION TO STRIKE DEFENDANTS' ANSWER AND ENTER DEFAULT BASED ON THE REPEATED DISCOVERY ABUSES OF DEFENDANTS**

The Ninth Circuit "review[s] the district court's rulings concerning discovery, including the imposition of discovery sanctions, for abuse of discretion." *Goodman v. Staples The Office Superstore, LLC,* 644 F3d 817, 822 (9thCir.2011) (citations omitted).  The dismissal of an action and entry of default as a discovery sanction are reviewed under the abuse of discretion standard [*Dreith v. Nu Image, Inc.*, 648 F3d 779, 786 (9thCir.2011); *Fair Housing of Marin v. Combs,* 285 F3d 899, 905 (9thCir.2002)] and will only be overturned if there is a "definite and firm conviction that it was clearly outside the acceptable range of sanctions." *Estrada v. Speno & Cohen*, 244 F3d 1050, 1056 (9thCir.2001).

In this action, the District Court found: (1) Defendants withheld or destroyed material documents, including invoices, purchase orders and emails between Amercare and its Chinese contacts that were relevant to liability and damages resulting in the District Court sanctioning Defendants with an adverse instruction, AD.15; (2) Defendants filed false declarations with the Court concerning the availability of co-defendant's representative to attend deposition in Seattle, AD.15; (3) Defendant Wendy Hemming lied under oath in deposition, AD.15; (4)

Defendants violated the Court's September 10, 2009 discovery order, AD.15; and,

(5) Defendants may have submitted numerous false declarations in the action.

AD.15.

Defendants do not challenge the District Court's finding they withheld or destroyed relevant material documents that went to liability and damages. Defendants "do not claim the District Court abused its discretion when it imposed that sanction." OB, pg.31. While Defendants now seek to trivialize their egregious conduct ("some documents relating to the TB-38-S were missing from production, and had been lost either before the lawsuit, or during"), they do not dispute they withheld or destroyed documents that were relevant to liability and damages.

The record in this action is not of a District Court that acted outside of the acceptable range of sanctions. Indeed, the District Court's measured conduct at every finding of discovery abuse by Defendants has resulted in severe prejudice to Plaintiffs.  Despite finding Defendants had withheld or destroyed material documents concerning liability and damages, the District Court curiously granted summary judgment finding Plaintiffs had not produced evidence of sales of the infringing toothbrushes.  Despite being informed Defendants had lied concerning the availability of H&L Industrial's representative to attend deposition, the District Court did not order H&L Industrial to appear for deposition in Seattle and granted H&L Industrial's motion for summary judgment in part.  Further, despite finding

Defendants had lied under oath; violated its September 10, 2009 discovery ruling; and, had most likely filed false declarations and after granting Plaintiffs' Rule 37 motion, the District Court refused to award damages to Plaintiffs based on the available evidence presented by Plaintiffs, but rather, held Plaintiffs to an evidentiary standard impossible to achieve in light of Defendants' refusal to comply with the District Court's own orders resulting in an extremely limited damages award.

Contrary to Defendants' protests, the record before this Court demonstrates the District Court did not abuse its discretion and act outside of the acceptable range of sanctions.

## B. DEFENDANTS VIOLATED THE DISTRICT COURT'S SEPTEMBER 10, 2009 DISCOVERY ORDER WHEN THEY FAILED TO PRODUCE THE PRODUCT PRICE LISTS

The District Court's September 10, 2009 Order required Defendants to produce all flexible handle toothbrush documents. The particular designation used by Defendants for the flexible handle toothbrushes was irrelevant in producing documents. AD.37-38. The District Court concluded that "[a]ll requests for documents ... relating to flexible handle toothbrushes are proper requests with which Defendants must comply." AD.37-38.

First, Defendants never complied with the District Court's September 10,

2009 discovery order based on their conduct in withholding or destroying relevant material documents that were relevant to liability and damages.

Second, it cannot reasonably be argued that Defendants did not again violate the District Court's September 10, 2009 discovery order when they failed to produce *any product price lists in this action which included flexible handle toothbrushes*. This conduct was another clear violation of the District Court's discovery order.

Defendants' argue "documents related to the TB-FLX handle-less toothbrush were not discoverable under the plain language of the Court's order." OB, pg.51.  Defendants' argument is more of the "semantic somersaulting" noted by the District Court in granting the Rule 37 motion.

Defendants argue that "after hearing [the District Court] determined that the TB-FLX was an entirely different toothbrush from the accused brush and from the Loops Flexbrush." OB, pg.49.  This statement is false. At the hearing on default damages, Defendants sandbagged Plaintiffs and presented the District Court with samples of toothbrushes Defendants represented to be certain toothbrush designations noted in documents independently discovered by Plaintiffs. These samples had never been produced in discovery, so they were never the subject of examination.  The District Court concluded only that these sample toothbrushes were distinct in size, shape, and material from the patented product. AD.27.  The

District Court did not determine and at no time has ever determined whether the toothbrush samples presented by Defendants at the hearing were in fact the flexible handle toothbrushes on the product pricing lists sent to the State of West Virginia. As correctly noted by Defendants, the District Court did not change or modify its Rule 37 motion order for the simple fact that it never determined the toothbrush samples presented by Defendants at the hearing were in fact the flexible handle toothbrushes listed on the product pricing lists. OB, pg. 68.

Moreover, even if the samples Defendants produced at the hearing were the same as the flexible handle toothbrushes referenced in the product price lists, Defendants' still violated the discovery order. That order required Defendants to produce "[a]ll requests for documents ... relating to flexible handle toothbrushes." AD.37-38. Both of the product price lists expressly reference flexible handle toothbrushes.  The first product price list discovered by Plaintiffs and marked as Exhibit 1 to Ms. Hemming's November 3, 2009 deposition contains a category of toothbrushes with the heading "AMERFRESH TOOTHBRUSHES - FLEXIBLE HANDLE." A.588. The second product price list discovered by Plaintiffs from the State of West Virginia contains an identical category of toothbrushes with the heading "AMERFRESH TOOTHBRUSHES - FLEXIBLE HANDLE." A.672. Within those categories of toothbrushes on both price lists are multiple references to flexible handle toothbrushes. *Id*. Those documents fell within the court's

discovery order and the failure to produce them violated that order.

Defendants entire argument seeks to wordsmith around that discovery order. Defendants understand the product price lists identify flexible handle toothbrushes which should have been produced but now argue these toothbrushes are not actually flexible handle toothbrushes and therefore did not have to be produced. Defendants engage in a misdirected examination of the meaning of the term handle; argue at worst they were mistaken in not producing the product price list; and, direct the Court to Plaintiffs actions or inactions during discovery to support their conduct in not producing the product price lists. None of these arguments are relevant. The District Court's discovery ruling was clear and direct.  Defendants were required to produce all documents, including product price lists, concerning flexible handle toothbrushes. They did not do that. Defendants did not have the discretion - as they now appear to argue - to decide whether the product price lists which expressly identify flexible handle toothbrushes should have been produced because in their opinion those toothbrushes were handled or not handled.

When the nature and extent of Defendants' pattern of deceit during discovery are considered, it cannot be said that the District Court abused its discretion in rejecting their protestations. On this record, the District Court more than sufficient reason to conclude Defendants had purposefully violated its discovery order.

## C.    DEFENDANT WENDY HEMMING LIED UNDER OATH AT DEPOSITION

For the first time in this case, Defendants now claim Wendy Hemming did not make false statements at deposition. OB, pgs. 61-63.  As noted by the District Court in granting the Rule 37 motion, "Defendants do not offer any explanation for Ms. Hemming's false testimony." AD.13.  Defendants' belated effort to offer an explanation here is demonstrably misleading and false.

At the time of the deposition on November 3, 2009, Ms. Hemming was shown a product price list that she testified was her "current price list" which "I don't change for years." This was a false statement as Ms. Hemming was in possession of another product price list which she sent to the State of West Virginia in December 2009. This undisclosed price sheet was marked "effective date 07/07/07" meaning it had been in use for over two years before Ms. Hemming's November 3, 2009 deposition.

 Defendants attempt to distort the question and answer cannot help them. The question posed to Ms. Hemming was whether she changed her pricing list from time to time.  Her response was clear: she had not changed her pricing list for years because her prices stayed the same.  Defendants now ignore the call of the question, i.e., had the price list changed, and argue Ms. Hemming did not give false testimony because she was answering the question as to her prices, not the pricing

list. OB, pg. 62. Despite the later discovery of the materially different price list she sent to West Virginia, Defendants still offer no plausible explanation for her false testimony she had not changed the price list for years.

A review of the two product price lists proves the prices had changed.  For instance, a review of soap items listed in the product price list shown to Ms Hemming at deposition with the designations S-3/4; S-15; S-15-UN; and 3-N-1-4 (A.588) had all increased in price as set forth in the product price list sent to the State of West Virginia. AD.672.

Defendants' are apparently aware of this inconvenient fact, as their argument again seeks to distort Ms. Hemming's deposition testimony. They argue "Hemming's answer that Amercare's toothbrush prices have stayed the same is a true statement." Ms. Hemming did not testify her "toothbrush prices have stayed the same."  When asked if she changed her pricing list (which contained every product sold by Amercare) from time to time, Ms. Hemming testified "Our price stay the same." Ms. Hemming's testimony was not limited to toothbrushes; but rather, goes to all of her products on the pricing list. Thus, this argument that Ms. Hemming's answer merely meant that toothbrush prices remained the same is an obvious manipulation of her testimony, which only further supports the District Court's sanction.

///

Defendants' argument that Ms. Hemming's testimony that the product price list shown to her at deposition was in fact Amercare's "current price list" was a truthful statement requires this Court ignore common sense. OB, pg. 62. The product price list sent to the State of West Virginia was marked "effective date 07/07/07" meaning it had been in use for over two years. In addition, the product price list sent to the State of West Virginia included price increases for many of the products as demonstrated above for soap.

Defendants' argue there is nothing inconsistent with using different product pricing lists with different product mixes. While this may be true, it ignores the fact the product price list sent to the State of West Virginia included price increases. Therefore, Defendants' argument requires the Court believe that Defendants interchanged their use of the different product price lists which contained different prices for the same product. Ms. Hemming's deposition testimony was demonstrably false as the product price list sent to the State of West Virginia had been in use for over two years ("effective date 07/07/07") and included price increases from the product price list shown to her at deposition. Whatever else might be said about this argument, the District Court was certainly well within its discretion to conclude otherwise, especially since Defendants did not raise it below.

///

47

**D.    DEFENDANTS, AND DEFENSE COUNSEL, PARTICIPATED IN THE MISREPRESENTATIONS TO THE DISTRICT COURT CONCERNING THE AVAILABILITY OF H&L INDUSTRIAL AT DEPOSITION**

Defendants argue the District Court's citation to a "prolonged pattern of misrepresentation and deceit" statement was based "in significant part on falsehoods by Mr. Lai, an employee of defendant H&L Industries related to his visa and passport status." This argument is not true. Defense counsel further argues he was misled by H&L Industrial's representative, Yun Lin Lai. This argument is not supported by the record. The prolonged pattern of misrepresentation and deceit was based on Defendants' withholding and/or destruction of documents, followed by Defendants' misrepresentations concerning the deposition of H&L Industrial, and finally cemented by Defendants' lying under oath, violating the discovery order, and filing false declarations with the District Court. Defendants attempt to give significant blame to the H&L Industrial deposition is simply not borne out by the record.

After the District Court ordered Defendant H&L Industrial to appear for deposition in person in Seattle, Defendants filed a motion for leave for H&L Industrial to appear at the deposition by videoconference. The sequence of events surrounding that motion demonstrates the complicity of all Defendants and their

defense counsel Rick Klingbeil.

First, the entire basis for the motion was the alleged lack of a visa for H&L Industrial's representative, Yun Lin Lai, to travel to the United States. What evidence was presented to this essential fact? Defendants did not file a declaration from Yun Lin Lai. That omission was and to this day is fatal to any argument made here. Defendants only filed a crafty declaration by defense counsel Rick Klingbeil, averring "I have been working with H&L Industrial to obtain Mr. Lai's presence in Seattle for a deposition." A.647. Mr. Klingbeil did not state who he spoke with at H&L Industrial and what they said to him concerning the alleged lack of a visa. Mr. Klingbeil did not declare he had spoken with Mr. Lai. In light of the fact the entire basis for the motion was the alleged lack of a visa for Mr. Lai to travel to the United States, Mr. Klingbeil should have affirmatively addressed this essential fact. He did not.

Plaintiffs responded by addressing Defendants' complete failure of proof in providing a declaration from Mr. Lai. A.650-651. Defendants filed their reply but failed to address their failure of proof. Instead, Defendants and Mr. Klingbeil continued their misdirection and represented that "in spite of substantial [but unexplained] efforts on the part of defendants and Mr. Lai to cause that to occur, and as discussed in defendants' earlier Motion for Leave, it appears to be impossible to obtain the necessary paperwork to bring him to Seattle in time."

A.654.

The deposition of Mr. Lai proved Defendants, and particularly defense counsel Rick Klingbeil, had provided false statements. Further, during the deposition, Mr. Klingbeil instructed Mr. Lai not to reveal any discussion with him in responding to the questions.  A.513.

On July 12, 2010, having been advised of Defendants' misrepresentations, the District Court ordered Plaintiffs to provide portions of Mr. Lai's deposition transcript which Plaintiffs did on July 20, 2010. A.663-664;665.

On July 13, 2010, Defendants filed the declaration of defense counsel Rick Klingbeil by which he represented he had:

> made several diligent inquiries to Mr. Lai regarding his availability, visa status, and other relevant issues. I also worked through Wendy Hemming to make these inquiries because her English skills are far better than Mr. Lai's, and she speaks Mandarin Chinese. At no time was I told or did I learn from Mr. Lai or anyone else that Mr. Lai possessed a valid visa that would allow him to travel outside of China or into the United States.

A.724.

Defense counsel's declaration is not credible.  If it is true he made inquiries to Mr. Lai concerning availability and visa status, why did Defendants not include a declaration of Mr. Lai in the motion for leave. Based on Mr. Klingbeil's representations, he was in direct communication with the witness and could easily have prepared and sent a declaration for execution. Further, if it is true he made

inquiries to Mr. Lai concerning availability and visa status, why did Mr. Klingbeil not include these essential facts in his declaration?  Certainly Mr. Klingbeil understood this was the basis for his motion and the District Court would expect these facts to be addressed. Plaintiffs strenuous objections in their response to Defendants' failure of proof certainly put Defendants and Mr. Klingbeil on notice of this issue.  Despite being placed on notice of the issue, Defendants, and defense counsel,  failed to file a declaration in the reply papers to address their alleged conversation. It is simply not credible to argue now that Mr. Lai and Mr. Klingbeil had a conversation about the alleged lack of a visa but simply chose to not respond to the direct challenge expressed by Plaintiffs.  The District Court was certainly within its discretion to conclude Mr. Klingbeil was less then forthcoming about Mr. Lai's availability and visa status.

Defense counsel's declaration is also irreparably inconsistent with his representations to the District Court on April 26, 2010, when he represented  "I have been working with H&L Industrial to obtain Mr. Lai's presence in Seattle for a deposition." A.647. On July 13, 2010, defense counsel represented he "also worked through Wendy Hemming to make these inquiries." A.724.  Which representation is true, did he work alone or did he work through Ms. Hemming? Defendants requested and Plaintiffs provided a translator for the deposition based on Mr. Lai being a Chinese citizen. How could defense counsel even communicate

Mr. Lai concerning availability and visa status if Mr. Lai did not speak English and required a translator for deposition?  Further, given the gravity of the situation, i.e., allegations of filing false declarations with the District Court, why did Defendants not file a declaration from Ms. Hemming attesting to the facts set forth in the declaration of defense counsel Rick Klingbeil? If it is true that Wendy Hemming worked with Mr. Klingbeil in making inquiries to Mr. Lai, why did Defendants not file her declaration attesting to these facts?

On July 12, 2010, the District Court ordered Plaintiffs to lodge the deposition transcript of Mr. Lai. A.663. In that order, the District Court indicated it would not take any action without allowing Defendants an opportunity to be heard. A.664.  Defense counsel filed his declaration the next day. A.723. However, given the gravity of the situation, i.e., allegations of filing false declarations with the District Court, why did Defendants not file a declaration from Ms. Hemming attesting to the facts set forth in the declaration of defense counsel Rick Klingbeil? If it is true that Wendy Hemming worked with Mr. Klingbeil in making inquiries to Mr. Lai, why did Defendants not file her declaration attesting to these facts? To this date, Defendants have never filed a declaration from Ms. Hemming attesting to the facts ascribed to her by Mr. Klingbeil.

On August 12, 2010, Defendants filed a declaration of H&L Industrial's representative, Yun Lin Lai. A.726.  This declaration - a confession of all the

wrongs - is not credible and raised more issues than it answers. First, if it is true that Mr. Lai lied to defense counsel Rick Klingbeil about his visa initially, we are back full circle to why Mr. Klingbeil did not get a declaration from Mr. Lai to that effect to support the initial motion for leave (obviously Defendants had access to declarations) or include those facts in his declaration filed with the District Court (particularly after receiving Plaintiffs' response).  Second, Mr. Lai's declaration is irreparably inconsistent with Mr. Klingbeil's declaration.  Mr. Lai declared he spoke with Mr. Klingbeil "through a person engaged as an interpreter." A.726.  Mr. Klingbeil made no mention of an interpreter in his declaration. A.723-725. Why do they have differing versions of the use of an interpreter?  Mr. Lai did not indicate anywhere in his declaration that he "worked through Wendy Hemming" as part of this process. A.726-728. Mr. Klingbeil declared he "worked through Wendy Hemming to make these inquiries." A.724. Why do they have differing versions of the use of Wendy Hemming in this process?

This record demonstrates Defendants - and each of them - were involved in the filing of false statements concerning the deposition of H&L Industrial. More important, it demonstrates that the District Court did not abuse its discretion when it concluded all were culpable.

///

///

**E.    THE DISTRICT COURT CONSIDERED ALL FACTORS BEFORE IMPOSING THE SANCTION OF STRIKING THE ANSWER**

**(1)    Extraordinary Circumstances Existed**

Dismissal is justified in "response to abusive litigation practices" and to "insure the orderly administration of justice and the integrity of the court's orders." *Halaco Engineering, Inc. v. Costle*, 843 F2d 376, 380 (9thCir.1988).

The District Court found a prolonged pattern of misrepresentation and deceit by Defendants which included: (1) Defendants lost, destroyed, or withheld material documents, including invoices, purchase orders and emails between Amercare and its Chinese contacts that were relevant to liability and damages resulting in the District Court sanctioning Defendants with an adverse instruction, AD.15; (2) Defendants filed false declarations with the Court concerning the availability of co-defendant's representative to attend deposition in Seattle, AD.15; (3) Defendant Wendy Hemming lied under oath in deposition, AD.15; (4) Defendants violated the Court's September 10, 2009 discovery order, AD.15; and, (5) Defendants may have submitted numerous false declarations in the action. AD.15.  Further, the District Court's determination that 192,672 of the accused toothbrushes were imported by Defendants in July of 2008, this is the sixth finding of a false statement by Defendants, as Defendants provided sworn responses to interrogatories in discovery stating their last import had been in May 2008. A.570.

Defendants argue their failure to produce the price sheets was not willful, bad faith conduct and was only a misunderstanding. They do not address, however, their conduct in withholding or destroying documents; their misrepresentations concerning the H&L Industrial deposition; Ms. Hemming's false deposition testimony; or, their false interrogatory responses. As discussed above, the District Court had sufficient reason to conclude Defendants' failure to produce the product price lists is willful, especially in light of the other extensive misconduct that Defendants do not even try to explain away.

### (2)    Willfulness, Bad Faith and Fault by Defendants

Defendants' only argument here is "If there was fault, it arose from Amercare's and Hemming's failure to understand the Discovery Order, and was nothing more than negligence." This is not a credible argument and the District Court was certainly not required to accept it.

There are six known willful and bad faith discovery findings in this action supporting the District Court's determination that Defendants engaged in a prolonged pattern of misrepresentation and deceit. It starts with the findings that Defendants withheld or destroyed documents, which Defendants do not challenge; it continues with misrepresentations concerning the deposition of H&L Industrial, which Defendants admit were falsehoods; it is cemented by Ms. Hemming's lying under oath, violating the discovery order and most likely filing numerous false

declarations; and, finally it is confirmed by the false discovery responses

concerning their last importation of the accused products for NYC.

**(3)    The District Court's Measured Conduct In Previously Imposing Lesser Sanctions Demonstrated the Futility of Anything Less Than The Sanction Imposed**

Defendants' argue the "District Court did not consider or discuss the

efficacy of lesser sanctions." This argument is nonsense.

The District Court's ruling expressly found it "is tremendously concerned

with what appears to be a prolonged pattern of misrepresentation and deceit before

this Court." AD.15.  In crafting the appropriate remedy, the Court indicated it had

"already imposed the sanction of an adverse instruction" which "[a]pparently ...

has done little to promote respect for the integrity of the discovery process."

AD.16.  The Court determined "it is unclear how an adverse instruction would now

alleviate the damage that has been caused by Defendants' continued failure to

cooperate with Plaintiffs in discovery" and noted it was "now faced with new

evidence that may or may not demonstrate that the partial summary judgment order

was made in error." AD.16-17.

The District Court concluded:

[T]he new evidence, combined with the pattern of deception and
misrepresentation on the part of Defendants throughout this litigation,
indicates that the Court cannot be certain that any order it enters in this case

will be supported by the benefit of a full, unadulterated record. Neither Plaintiffs, nor the Court, will ever "have any comfort that it knows the truth, and that it can properly prepare this case for trial ... The integrity of this Court and our judicial system .. has been undermined ... [by Defendants'] conduct in this case." *Monsanto Co. v. Ralph*, 382 F.3d 1374, 1379 (Fed.Cir.2004). Accordingly, the Court exercises its discretion pursuant to Rule 37 and hereby strikes the pleadings of Defendants, including Defendants' answer and affirmative defenses, and enters judgment in favor Plaintiffs on the issue of liability.

A.17.

Contrary to Defendants' representations, the District Court considered - and rejected - lesser sanctions to these repeat offenders as futile.

### (4)    The Nexus Between The Sanction, The Misconduct and the Matters in Controversy

Defendants' reassert their false argument the District Court found the flexible handle toothbrushes listed on the improperly withheld product price lists did not infringe the accused product. The District Court has never determined whether the toothbrush samples presented by Defendants at the hearing for the first time were in fact the flexible handle toothbrushes on the product pricing lists sent to the State of West Virginia. As correctly noted by Defendants, the District Court did not change or modify its Rule 37 motion order for the simple fact that it never determined the toothbrush samples presented by Defendants at the hearing were in fact the flexible handle toothbrushes listed on the product pricing lists. OB, pg.66.

///

### (5)    Plaintiffs Have Been Prejudiced By Defendants' Conduct

During the entirety of the action, Plaintiffs sought discovery from Defendants as to the total amount of infringing product that was manufactured and imported into the United States.  To this date, Defendants have never produced those documents. Defendants have not produced purchase orders to factories in China for the infringing product; invoices from the factories in China for the manufacture of the infringing product; contracts with the factories in China for the manufacture of the infringing product; or, communications with factories and manufacturers concerning the infringing product, among other missing documents. This conduct deprived Plaintiffs of the source data to determine the quantity and dates of infringing product manufactured by Defendants in China and imported to the United States.

As a result of Defendants' refusal to cooperate in discovery, Plaintiffs were forced to bring successive discovery motions before the District Court seeking various sanctions.  The District Court found: (1) Defendants lost, destroyed, or withheld material documents, including invoices, purchase orders and emails between Amercare and its Chinese contacts that were relevant to liability and damages resulting in the District Court sanctioning Defendants with an adverse instruction, AD.15; (2) Defendants filed false declarations with the Court concerning the availability of co-defendant's representative to attend deposition in

Seattle, AD.15; (3) Defendant Wendy Hemming lied under oath in deposition,

AD.15; (4) Defendants violated the Court's September 10, 2009 discovery order,

AD.15; and, (5) Defendants may have submitted numerous false declarations in the

action. AD.15.

## F.    DEFENSE COUNSEL FAILED TO COMPLY WITH BOTH THE DISTRICT COURT'S DISCOVERY RULING AND HIS CERTIFICATION REQUIREMENTS PURSUANT TO FRCP, RULE 26(g)

### (1)    Federal Rules of Civil Procedure, Rule 26(g)

By signing a discovery response, an attorney certifies that to the best of their

knowledge, information, and belief formed after a reasonable inquiry:

> (B) with respect to a discovery request, response, or objection, it is:
>
> > (i) consistent with these rules and warranted by existing law or by a non frivolous argument for extending, modifying, or reversing existing law, or establishing new law;
> >
> > (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
> >
> > (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

The sanction for an improper certification under this rule "may include an

order to pay the reasonable expenses, including attorneys fees, caused by the

violation." FRCP, Rule 26(g)(3).

**(2)     The District Court's September 10, 2009 Discovery Order and**

**Defense Counsel's Refusal to Respond or Comply**

On September 10, 2009, the District Court granted Plaintiffs' motion to

compel the production of documents. AD.37. Defendants did not produce any

documents after the entry of the Court's Order of September 10, 2009.  A.598-599.

On October 12, 2009, Plaintiffs wrote to defense counsel indicating no responsive

documents had been produced. A.599.  Defense counsel did not respond to the

letter. A.599.  On October 21, 2009, Plaintiffs again wrote to Defendants and asked

if Defendants intended to comply with the Court's September 10, 2009 Order.

A.599.   Defense counsel did not respond to the letter. A.599.

**(3)     The Depositions of Defendants Demonstrated The Existence of**

**Substantial Responsive Documents**

On November 2, 2009, Plaintiffs took the deposition of Wendy Hemming.

Ms. Hemming, defended by defense counsel Rick Klingbeil, testified throughout

the entire day of documents in the possession of Defendants that had not been

produced which had been ordered by the District Court.  The testimony established

Mr. Klingbeil made no attempt to determine if responsive documents existed in

initially responding to Plaintiffs' document requests or in complying with the

District Court September 10, 2009 discovery ruling.

First, Ms. Hemming testified Kai Yuen Import and Export Company manufactured the flexible handle toothbrushes for Amercare; invoiced Amercare; and, she was in possession of such invoices. A.604. Second, Hemming testified she received invoices from H&L Industrial, her manufacturer's representative, for the flexible handle toothbrushes. A.606.  Third, Hemming testified to invoices received from mold and tool makers for the flexible handle toothbrushes.  A.602. Fourth, Hemming testified to bills and invoices for the shipping costs for the flexible handle toothbrushes. A.603. Fifth, Hemming testified to freight charges related to the flexible handle toothbrushes. A.605.

The deposition of Julie Siegel, the Operations Manager for Amercare, proved no better. A.615-616.  Ms. Siegel testified she created a sub-file in the email system of Amercare for communications with their manufacturer's rep, H&L Industrial, called the Lai file in which all of the e-mails, invoices and packing lists were included.  A.617.

Defendants did not produce any of these documents.  The testimony established Mr. Klingbeil made no attempt initially to determine if responsive documents existed and then after being advised of the existence of responsive documents made no effort to follow up with their production in the action.

///

///

61

**(4)     The Depositions of Defendants Demonstrated Defense Counsel**

**Never Instructed Defendants to Preserve Evidence**

Siegel testified that she was never instructed not to delete information from the Amercare computer system after the filing of the lawsuit and has regularly deleted files even as recently as within a month of her deposition. A.618. Ms. Siegel's testified she was never instructed to preserve evidence. A.618. Further, Ms. Siegel admitted to deleting files from Amercare's computer system including a file she created for H&L Industrial, called the Lai file. A.618.

## CONCLUSION

The sole issue here is whether the District Court exceeded its broad discretion in fashioning the sanctions it did here. When Defendants extensive misconduct is considered - most of which Defendants do not seriously dispute - it cannot be said that the District Court went too far. To the contrary, since Defendants enjoyed the benefit of their misconduct even after their answers were stricken because Plaintiffs still lacked the evidence to prove all of their damages, the District Court clearly acted well within its discretion when it entered the judgment it did here.

Defendants have not shown reversible error under the abuse of discretion standard. All they have done is present various arguments that the District Court might have construed the facts differently.  However, the District Court was not

required to accept Defendants arguments and this Court will not substitute its own assessment for that of the District Court. The judgment should be affirmed.

The District Court was also not required to accept Mr. Klingbeil's strained efforts to explain away his misconduct. In fact, those efforts only further demonstrate that the District Court had very good reason to conclude that Mr. Klingbeil was an active participant in Defendants' efforts to avoid disclosure of highly relevant information. His complete failure to comply with the duties imposed on him as counsel of record, particularly Federal Rules of Civil Procedure, rule 26(g), and his complicity in misrepresenting Mr. Lai's ability to comply with the District Court's order were reason enough by themselves to justify the sanctions imposed here. Accordingly, the District Court order imposing sanctions on Mr. Klingbeil should be affirmed.

Dated: January 13, 2014          STEPHEN M. HOGAN

                                  /s/ Stephen M. Hogan
                        By:    _____
                                 Stephen M. Hogan
                                 Attorneys for Plaintiffs LOOPS, LLC and
                                 LOOPS FLEXBRUSH, LLC

**FORM 30. Certificate of Service**

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on
by:

Jan 16, 2014

☐ US mail
☐ Fax
☐ Hand
☒ Electronic Means
  (by email or CM/ECF)

Stephen M. Hogan

/s/Stephen M. Hogan

Name of Counsel

Signature of Counsel

Law Firm  Stephen M. Hogan, Attorney at Law

Address  1133 Sixth Avenue, Suite 207

City, State, ZIP  San Diego, CA 92101

Telephone Number  619-615-9135

FAX Number

E-mail Address  stephen.hogan@sbcglobal

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

64

**Form 19**

FORM 19.  Certificate of Compliance With Rule 32(a)

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

☑    The brief contains [        13,931        ] words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

☐    The brief uses a monospaced typeface and contains [                    ] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☑    The brief has been prepared in a proportionally spaced typeface using
[            WordPerfect Version X5            ] in
[            14 point Times New Roman            ], or

☐    The brief has been prepared in a monospaced typeface using
[                        ] with [
[                        ].

_____
(Signature of Attorney)

/s/ Stephen M. Hogan
_____
(Name of Attorney)

Attorney for Appellees
_____
(State whether representing appellant, appellee, etc.)

January 15, 2014
_____
(Date)

[ Reset Fields ]